IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

|  |  |  |
|---|---|---|
|  |  | Civil Action No. 1:16-CV-02431-KLM |
| KRISTINA HUFFMAN, | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| BC SERVICES, Inc., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MOTION TO DISMISS

COMES NOW Defendant, BC Services, by and through its counsel, and pursuant to F.R.Civ.P. 12(b)(6), respectfully submits the following Motion to Dismiss, and brief in support thereof. Undersigned counsel has conferred with counsel for the Plaintiff regarding this motion and the Plaintiff has indicated that she objects to the relief requested herein.

## **FACTS**

The facts according to the Plaintiff's Complaint (hereinafter referred to as the "Complaint") and as relevant herein are that BC Services, acting as a debt collector, mailed a letter to the Plaintiff Kristina Huffman ("Huffman") on March 3, 2016. Complaint, ¶ 9. The letter stated "This is an attempt to collect a debt by a debt collector", and the balance on the letter was "zero dollars." Complaint, ¶¶ 10-11. These two statements caused Huffman to be "unsure if

there was a debt" so she alleges that the letter was both deceptive and, that it was "harassing" her.  Complaint, ¶ 12.

Huffman's Complaint omits that she telephoned BCS on February 29, 2016 and related that she and her husband were in the process of purchasing a house. See Defendant's Affidavit in Support of Motion to Dismiss, ¶¶ 8-9, attached as Exhibit A and hereinafter "Affidavit".  In doing so, they became aware that various medical debts incurred by Huffman's husband was appearing on his credit bureau report. Affidavit, ¶¶ 5, 8. Huffman related that she wanted to pay these debts off, in furtherance of their mortgage application for the house purchase. Id., ¶ 8. While making the payment and obtaining confirmation that the Plaintiff's credit card would be processed for the agreed upon amount of $425.00, the Defendant told the Plaintiff that:

> "I have to send the notices out to you in your name, but as long as your card clears it'll show zero balance."
> And,
> "Keep in mind, you'll receive all those Notices in your name, showing that it's been listed with us but they'll have a zero balance."

Id., ¶ 10.

Huffman then telephoned back minutes later and asked for a list of the accounts that comprised the debt she was paying, so that she could keep track of them. Id., ¶ 11. In response, BCS again affirmed that it was sending her the letters referenced above. Id., ¶ 12. Huffman confirmed that she would keep an eye out for the letter. Id., ¶ 12. Within a week after the above conversation, the Plaintiff received the letter she requested. The letter was BCS' initial written communication to Huffman. Id., ¶ 13.

Now, some 8 months later, Huffman alleges that one of the statements of the letter, "This is an attempt to collect a debt by a debt collector" is false and when she read it she was deceived and harassed. Complaint, ¶ 11-12. These facts, even when viewed in a light most favorable to

2

Plaintiff, fail to establish any cause of action against the Defendant and therefore the Plaintiff's claim should be dismissed.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) provides that a party may present the defense of failure to state a claim upon which relief can be granted via motion, prior to filing that party's responsive pleading. On a motion to dismiss for failure to state a claim, all factual allegations in the complaint are accepted to be true. See *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002).

Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions… Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1965-65, (2007) (citations, internal quotation marks, and brackets omitted); *see also* id. *at 1966* (pleading must "possess enough heft to show that the pleader is entitles to relief") (citations, internal quotation marks, and brackets omitted). Thus, "a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion," *Port Dock & Stone Corp. v. Old Castle Ne., Inc*., 507 F.3d 117, 121, (2d Cir, 2007) The factual allegation of a complaint must be sufficient "to render the claim plausible," *Iqbal v. Hasty*, 490 F.3d 143, 158 (2d. Cir. 2007). Finally, the 10th Circuit has also held that a plaintiff's general statements that amount to mere conclusory allegations, are insufficient to state a claim. See, *Hall v. Bellman*, 935 F.2d 1106, 1110 ($10_{th}$ Cir. 1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim" (internal citations omitted)). Even under pleading rules which are increasingly more forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material

elements necessary to sustain a recovery under some viable legal theory. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

## ARGUMENT

Huffman fails to state any facts supporting any cause of action under the Fair Debt Collection Practices Act, 15 U.S.C. 1692 et seq. (the "FDCPA"). The sole allegation against BCS is that it sent Huffman a letter that stated it was an "attempt to collect a debt" and that the balance on the letter was "zero dollars" Complaint, ¶¶ 10-11. Huffman alleges that the "attempt" is "false" where the balance in the letter is zero. BCS argues that sending the letter after the payment was made, showing the balance as zero and with the phrase "attempt to collect a debt" is both logically sound, and legally appropriate. Further, Huffman cannot sincerely claim that she was confused in light of her conversation with BCS on February 29, 2016 wherein the letters were explained to her satisfaction before they were sent to her. Affidavit, ¶¶ 10-12.

First, it is logical to include such a statement in the follow up letter to Huffman, because the entire relationship between the parties is predicated upon the existence of a debt. Therefore, even after Huffman has submitted payment in full, BCS' communication with her in this context was still an attempt to collect a debt. It was clear from the conversation between Huffman and BCS that she expected to get the letter regarding the debt in response to her payment. To put it another way, had BCS neglected to send Huffman the letter she requested, and as agreed upon, it would have arguably been reasonable for her to cancel her credit card payment. Had she done so, the debt would still be owed, and BCS would still be attempting to collect. In other words, the letter that BCS sent Huffman was in furtherance of the collection of the debt, even after she paid it to zero, and the inclusion of language advising "this is an attempt to collect a debt by a debt collector" merely reiterates what BCS agent had already told Huffman.

Second, the language BCS included in the letter is required by law. The FDCPA requires, inter alia, that debt collectors affirmatively set forth in all communications with consumers "that the communication is from a debt collector." 15 U.S.C. 1692e(11). But where, as here with the letter to Huffman, the letter is "the <u>initial written communication</u> with the consumer," the debt collector violates the FDCPA if it doesn't include the advisement "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." *Id.* (emphasis added). This statutory provision has created what is sometimes referred to in the collection industry as the "mini-miranda", a set of advisements that collection agencies affirmatively provide in nearly all their communications with consumers. Generally, the advisements track closely the form set forth in the letter that BCS sent to Huffman, namely, that the "communication is an attempt to collect a debt by a debt collector." And that, "[a]ny information obtained will be used for that purpose." Despite the word "attempt," there is nothing in BCS' initial written advisements that demand payment, or otherwise independently establish that a debt is actually owed. In the situation where the debt has been paid in the days just before these advisements are provided, even the least sophisticated consumer could neither be confused, deceived, nor harassed. In pursuing BCS for placing this statutorily mandated advisement in the letter, Huffman is seeking an unreasonable and unworkable interpretation of the FDCPA that is not supported by longstanding caselaw.

With regard to these disclosures, the purpose of the statute is fairly straightforward: "by requiring [the disclosures] in all communications, Congress has ensured that even if the first notice is not received by the consumer, …subsequent notices will nonetheless provide the consumer with the requisite disclosures." *Pipiles v. Credit Bureau of Lockport*, 886 F.2d 22 (2nd Cir. 1989). BCS argues that is irrelevant to the disclosure requirement that the letter showed a

zero balance, and sought no further information or response from Huffman. "We think it is clear from the plain language of section 1692e(11) that the debt collector must comply with both disclosure requirements, regardless of whether any information is requested." *Emanuel v. American Credit Exchange*, 870 F.2d 805 (2nd Cir. 1989)

Huffman asserts that the inclusion of the disclosures when the balance is zero amounts to deception. "[C]laims of deception in debt collection notice are handled by considering the clear import of the language, taken as a whole." *O'Connor v. Check Rite, Ltd.*, 973 F.Supp. 1010, 1016 (Colo. 1997) citing *Rosa v. Gaynor*, 784 F.Supp.1, 4 (D.Conn.1989). Courts have adopted a standard of the "least sophisticated consumer" to determine whether challenged debt collection activity violates § 1692e. See *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir. 1993). However, the challenged communication cannot be considered in a vacuum, as Huffman seeks to achieve here.

> "The 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care. However, the test has an objective component in that while protecting naïve consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness."

*Leblanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010). "The inquiry is not whether the particular plaintiff-consumer was deceived or misled." *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 (11th Cir. 2014). Even though the "least sophisticated debtor" standard is objective, that hypothetical debtor is charged with knowledge of the account's history, and the communication at issue must be considered in the context of all the other communications made to Huffman regarding the debt. The standard presumes "that the debtor has a basic level of understanding, which does not include bizarre or idiosyncratic

interpretations of collection notices." *Davis v. Hollins Law Firm*, __F.3d__ 2016  WL 4174747 (9th Cir. Aug. 8, 2016). (citations, quotation marks omitted).

Here, Huffman telephoned in to BCS for the first time on February 29, 2016 and tendered payment over the phone that same day. The parties agreed that BCS would send a letter Huffman listing the accounts she was paying, and, for some of those accounts, the letter would be the initial written communication with Huffman. <u>Affidavit</u>, ¶ 13. As such, BCS included language mandated by 15 U.S.C. 1692e(11) which was neither false, nor confusing, nor deceptive. Huffman knew she would be receiving a letter with balance showing zero, indeed it is what she wanted. <u>Affidavit</u>, ¶¶ 10-12. The facts in this matter do not rise to a cognizable legal claim.

WHEREFORE, Defendant requests this Court dismiss Plaintiff's Complaint in its entirety with prejudice and award Defendant its reasonable attorney fees and costs incurred in defending this action.

Respectfully submitted this November 28, 2016.

<u>s/ Brett P. Riley</u>___ _____
Brett P. Riley
General Counsel, BC Services, Inc.
550 Disc Dr.
Longmont, CO 80503
(303) 532-3674
Briley@bcservice.com
ATTORNEY FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

       I hereby certify that on November 28, 2016 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and served the plaintiff's counsel via ECF and email:

Yaakov Saks
RC Law Group, PLLC

And via email to: ysaks@rclawgroup.com

                                  s/ Brett P. Riley